M. Anderson Berry (262879)
Gregory Haroutunian (330263)
Brandon P. Jack (325584)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
6200 Canoga Avenue, Suite 375
Woodland Hills, CA 91367
Telephone: (747) 777-7748
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com
bjack@justice4you.com

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMELAH ELDER, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>SLT LENDING SPV, INC. DBA SUR LA TABLE,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

        Plaintiff JAMELAH ELDER ("Plaintiff"), individually and on behalf of all others

similarly situated, brings this action against Defendant SLT LENDING SPV, INC. DBA

SUR LA TABLE ("SLT" or "Defendant"), to obtain damages, restitution, and injunctive

relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record:

## I.    NATURE OF THE ACTION

1.    This is a data breach class action brought on behalf of current and former employees whose sensitive personal information was stolen by cybercriminals in a massive cyber-attack at SLT taking place between March 15, 2023 and March 25, 2023 (the "Data Breach").[1]

2.    Specifically, on May 24, 2023, SLT announced that it had experienced a cyber-attack when an unauthorized actor accessed certain folders on SLT's servers.[2] Following this cyber-attack, Defendant engaged a cybersecurity firm and reviewed the files contained in the affected folders.[3] In the following days, SLT learned and disclosed that certain data had been extracted from its files by an unauthorized actor.[4] The Data Breach reportedly involved at least 40,646 individuals.[5]

3.    Information stolen in the Data Breach included individuals' sensitive information, including at least, names, driver's license numbers or state identification

---

[1] Office of the Maine Attorney General, Data Breach Notifications, https://apps.web.maine.gov/online/aeviewer/ME/40/9267a066-024b-41de-a5f7-d871fe00cd97.shtml (last accessed on June 2, 2023).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

CLASS ACTION COMPLAINT

numbers, and/or medical or health information (collectively, the "Private Information" or "PHI and PII").

4.    As a result of the Data Breach, Plaintiff and Class Members suffered ascertainable losses in the form of loss of the value of their private and confidential information, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

5.    Plaintiff's and Class Members' sensitive personal information—which was entrusted to Defendant, its officials and agents—was compromised, unlawfully accessed, and stolen due to the Data Breach.

6.    Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

7.    Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyber-attacks of this type.

8.    Upon information and belief, the mechanism of the cyber-attack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a

CLASS ACTION COMPLAINT

known and foreseeable risk to Defendant, and Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

9.      In addition, Defendant and its employees failed to properly monitor the computer network and systems that housed the Private Information. Had Defendant properly monitored its property, it would have discovered the intrusion sooner.

10.      Because of the Data Breach, Plaintiff and Class Members suffered injury and damages in the form of theft and misuse of their Private Information.

11.      In addition, Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained is now in the hands of data thieves.

12.      Armed with the Private Information accessed in the cyber-attack, data thieves can commit a variety of crimes including, for example, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' health information to target other phishing and hacking intrusions based on their individual health needs, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

13.    As a further result of the Data Breach, Plaintiff and Class Members have been exposed to a substantial and present risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

14.    Plaintiff and Class Members have and may also incur out of pocket costs for, for example, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

15.    As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer damages and economic losses in the form of:  the loss of time needed to: take appropriate measures to avoid unauthorized and fraudulent charges; change their usernames and passwords on their accounts; investigate, correct and resolve unauthorized debits, charges, and fees charged against their accounts; and deal with spam messages and e-mails received as a result of the Data Breach. Plaintiff and Class Members have likewise suffered and will continue to suffer an invasion of their property interest in their own Private Information such that they are entitled to damages for unauthorized access to and misuse of their Private Information from Defendant. Further, Plaintiff and Class Members presently and will continue to suffer from damages associated with the unauthorized use and misuse of their Private Information as thieves will continue to use the stolen information to obtain money and credit in their name for several years.

CLASS ACTION COMPLAINT

16.    Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed and/or removed from the network during the Data Breach.

17.    Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring and identity restoration services funded by Defendant.

18.    Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct.

## II.    **PARTIES**

19.    Plaintiff Jamelah Elder is a resident and citizen of California. Plaintiff Elder is acting on her own behalf and on behalf of others similarly situated. Defendant obtained and continues to maintain Plaintiff Elder's Private Information and has a legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff Elder would not have entrusted her Private Information to Defendant had she known that it would fail to maintain adequate data security. Plaintiff Elder's Private Information was compromised and disclosed as a result of the Data Breach.

20.    Defendant SLT Lending SPV, Inc. DBA Sur La Table is a Washington based corporation headquartered at 6100 4th Avenue South, Suite 500 Seattle, WA 98108.

///

CLASS ACTION COMPLAINT

### III.    JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members exceeds 100, many of whom have different citizenship from Defendant, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

22.    This Court has personal jurisdiction over Defendant because Defendant is registered with the State of California to do business in this District, Defendant conducts substantial amounts of business in this District, Defendant owns and operates business locations in this District, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) as the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

### FACTUAL ALLEGATIONS

#### *Defendant's Business*

24.    Defendant is a retail store chain that sells culinary tools, cookware, bakeware, knives, small appliances, serving ware, and other kitchen gadgets.[6] Defendant also offers cooking classes.[7]

---

[6] https://www.jdsupra.com/legalnews/sur-la-table-confirms-march-2023-data-5186388/ (last accessed on June 2, 2023).

[7] *Id.*

-7-

25.     Defendant operates 50 stores across the United States, employs more than 1,426 people, and generates approximately $675 million in annual revenue.[8]

26.     In the ordinary course of being employed by Defendant, employees are required to provide Defendant with sensitive, personal and private information (including both PHI and PII) such as, including but not limited to, the following information:

- Name
- Driver's License Number or State Identification Number
- Medical or Health Information

27.     As a condition of being employed by Defendant, Plaintiff was required to disclose some or all of the Private Information listed above.[9]

28.     On information and belief, in the course of collecting Private Information from current and former employees, including Plaintiff, Defendant promised to provide confidentiality and adequate security for employee data through its applicable privacy policy and through other disclosures.

### ***The Cyber-Attack and Data Breach***

29.     In March 2023, Defendant experienced a cybersecurity incident where some of its systems were accessed, and information was extracted by an unauthorized actor.[10]

---

[8] *Id.*

[9] Sur La Table, *Privacy Policy*, https://www.surlatable.com/privacy-policy.html (last accessed on June 2, 2023).

[10]   Office of the Maine Attorney General, Data Breach Notifications, https://apps.web.maine.gov/online/aeviewer/ME/40/9267a066-024b-41de-a5f7-d871fe00cd97.shtml (last accessed on June 2, 2023).

30.    On or about May 24, 2023, Defendant announced that it "identified unusual activity in [its] network that caused certain devices to become unavailable."[11] Defendant launched an investigation and enlisted the services of cybersecurity experts to assist in the evaluation of the situation.[12] As a result of this evaluation, Defendant learned that "an unauthorized actor accessed certain folders on SLT's servers and viewed or obtained files between March 15, 2023, and March 25, 2023" and that these folders contained the Private Information of Defendant's employees.[13]

31.    Defendant admits that the files that were accessed and obtained by the unauthorized actor contained Private Information including "name, driver's license number or state identification number, and/or medical or health information."[14]

32.    The cyber-attack was expressly designed and targeted to gain access to private and confidential data, including (among other things) the personal information, or PHI and PII, of Defendant's current and former employees, including Plaintiff and the Class. Evidence of this specific targeting of Private Information is the fact that, according to Defendant's own forensic investigation, an unauthorized actor was able to extract the Private Information.

33.    Defendant notified impacted individuals on or about May 24, 2023.[15]

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

CLASS ACTION COMPLAINT

34.    As a result of Defendant's delay in providing notice, the risk of harm to Plaintiff and Class Members has increased. Consumer Reports has noted: "One thing that does matter is hearing about a data breach quickly. That alerts consumers to keep a tight watch on credit card bills and suspicious emails. It can prompt them to change passwords and freeze credit reports…. If consumers don't know about a breach because it wasn't reported, they can't take action to protect themselves."[16]

35.    Defendant also failed to encrypt the PHI and PII stored on its server, evidenced by the fact that hackers were able to steal the Private Information in a readable form.

36.    Defendant acknowledges its cybersecurity and data protection was inadequate because it admits after the cyber-attack that it "took steps to contain the activity."[17]

37.    Defendant also acknowledges that Plaintiff and Class Members face a substantial and present risk of identity theft because it is actively encouraging them to "be vigilant for incidents of fraud or identity theft by reviewing [their] account statements and free credit reports for any unauthorized activity."[18]

---

[16] The Data Breach Next Door, Consumer Reports, Jan. 31, 2019, available at: https://www.consumerreports.org/data-theft/the-data-breach-next-door/ (last accessed on June 2, 2023).
[17] Office of the Maine Attorney General, Data Breach Notifications, https://apps.web.maine.gov/online/aeviewer/ME/40/9267a066-024b-41de-a5f7-d871fe00cd97.shtml
 (last accessed on June 2, 2023).
[18] *Id.*

38.    Based on the Notice of Data Breach letter she received, which informed Plaintiff that her Private Information was extracted from Defendant's network and computer systems, Plaintiff believes her Private Information was stolen from Defendant's networks (and subsequently sold) as a result of the Data Breach.

39.    Further, the removal of the Private Information from Defendant's system demonstrates that this cyber-attack was targeted.

40.    Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

41.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

42.    Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches suffered by similar retailers preceding the date of the breach.[19]

43.    In 2022, there were 1,802 data breaches, nearly eclipsing 2021's record wherein 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive

---

[19] *See* 5 cyber threats retailers are facing – and how they're fighting back (March 29, 2023) https://www.csoonline.com/article/3691821/5-cyber-threats-retailers-are-facing-and-how-they-re-fighting-back.html (last accessed on June 2, 2023.

records being exposed, a 68% increase from 2020.[20] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[21]

44.    Indeed, cyber-attacks, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant' industry, including Defendant.

### Defendant Fails to Comply with FTC Guidelines

45.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

46.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they

---

[20]    *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6 (last accessed on June 2, 2023).
[21]    See *Data Breaches Hit Lots More People in 2022* (Jan. 25, 2023) https://www.cnet.com/tech/services-and-software/data-breaches-hit-lots-more-people-in-2022/ (last accessed June 2, 2023).

CLASS ACTION COMPLAINT

keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

47.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

48.    The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

49.    Defendant failed to properly implement basic data security practices, and its failure to employ reasonable and appropriate measures to protect against unauthorized

CLASS ACTION COMPLAINT

access to customer PHI and PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

50.    Defendant was at all times fully aware of their obligation to protect the PHI and PII of its employees. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### *Defendant Failed to Comply with Industry Standards*

51.    A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing Defendant's cybersecurity practices.

52.    Best cybersecurity practices that are standard in Defendant's industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

53.    Upon information and belief, Defendant failed to meet the minimum standards of the following cybersecurity frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical

Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

54.    These foregoing frameworks are existing and applicable industry standards in Defendant's industry. Defendant knew it was a target for hackers. Despite understanding the risks and consequences of inadequate data security, Defendant failed to comply with these accepted standards, thereby opening the door to the cyber-attack and causing the Data Breach.

## ***Defendant's Breach***

55.    Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems, networks, and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.  Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.  Failing to adequately protect employees' Private Information;

    c.  Failing to properly monitor its own data security systems for existing intrusions, encryptions, brute-force attempts, and clearing of event logs;

    d.  Failing to apply all available security updates;

    e.  Failing to install the latest software patches, update its firewalls, check user account privileges, or ensure proper security practices;

CLASS ACTION COMPLAINT

f.  Failing to practice the principle of least-privilege and maintain credential hygiene;

g.  Failing to avoid the use of domain-wide, admin-level service accounts;

h.  Failing to employ or enforce the use of strong randomized, just-in-time local administrator passwords, and;

i.  Failing to properly train and supervise employees in the proper handling of inbound emails.

56.    As the result of computer systems in dire need of security upgrading and inadequate procedures for handling cybersecurity threats, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

57.    Accordingly, as outlined below, Plaintiff and Class Members now face a substantial, increased, and present risk of fraud and identity theft.

***Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft***

58.    Defendant was well aware that the Private Information it collects is highly sensitive, and of significant value to those who would use it for wrongful purposes, like the operators who perpetrated this cyber-attack.

59.    The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity

theft will face "substantial costs and time to repair the damage to their good name and credit record."[22]

60.    That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it.

61.    They do this by selling the spoils of their cyber-attacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim.

62.    For example, armed with just a name and date of birth, a data thief can use a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number.

63.    Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional

---

[22] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, available at: https://www.gao.gov/assets/gao-07-737.pdf (last accessed on June 1, 2023) ("GAO Report").

confidential or personal information through means such as spam phone calls and text messages or phishing emails.

64.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[23]

65.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

66.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

67.     In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

---

[23] *See* https://www.identitytheft.gov/Steps (last accessed on June 2, 2023).

CLASS ACTION COMPLAINT

68. A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[24]



69. What's more, theft of Private Information is also gravely serious. PII is a valuable property right.[25]

70. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious

---

[24] *See* Jason Steele, *Credit Card and ID Theft Statistics*, CreditCards.com (Oct. 23, 2020), available at:
https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php (last accessed on June 2, 2023).

[25] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

CLASS ACTION COMPLAINT

risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

71.     It must also be noted there may be a substantial time lag – measured in years – between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used.

72.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

73.     Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

74.     There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at a substantial and immediate present risk of fraud and identity theft that will continue for many years.

75.     Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

-20-
CLASS ACTION COMPLAINT

76.    Sensitive Private Information can sell for as much as $363 according to the Infosec Institute.

77.    PII is particularly valuable because criminals can use it to target victims with frauds and scams.

78.    Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

79.    The PII of consumers and employees remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200.

80.    Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."

81.    Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

///

CLASS ACTION COMPLAINT

82.    According to account monitoring company LogDog, medical data sells for $50 and up on the Dark Web.[26]

83.    It must also be noted there may be a substantial time lag – measured in years – between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used.

84.    According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

85.    Driver's license numbers are also incredibly valuable. "Hackers harvest license numbers because they're a very valuable piece of information. A driver's license can be a critical part of a fraudulent, synthetic identity – which go for about $1200 on the Dark Web.  On its own, a forged license can sell for around $200."[27]

---

[26] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content (last accessed June 2, 2023)

[27] https://www.forbes.com/sites/leemathews/2021/04/20/hackers-stole-customers-license-numbers-from-geico-in-months-long-breach/?sh=3e4755c38658 (last accessed on June 2, 2023).

CLASS ACTION COMPLAINT

86.    According to national credit bureau Experian:

A driver's license is an identity thief's paradise. With that one card, someone knows your birthdate, address, and even your height, eye color, and signature. If someone gets your driver's license number, it is also concerning because it's connected to your vehicle registration and insurance policies, as well as records on file with the Department of Motor Vehicles, place of employment (that keep a copy of your driver's license on file), doctor's office, government agencies, and other entities. Having access to that one number can provide an identity thief with several pieces of information they want to know about you. Next to your Social Security number, your driver's license number is one of the most important pieces of information to keep safe from thieves.

87.    According to cybersecurity specialty publication CPO Magazine, "[t]o those unfamiliar with the world of fraud, driver's license numbers might seem like a relatively harmless piece of information to lose if it happens in isolation."[28] However, this is not the case. As cybersecurity experts point out:

"It's a gold mine for hackers. With a driver's license number, bad actors can manufacture fake IDs, slotting in the number for any form that requires ID verification, or use the information to craft curated social engineering phishing attacks."[29]

88.    Victims of driver's license number theft also often suffer unemployment benefit fraud, as described in a recent New York Times article.[30]

---

[28] https://www.cpomagazine.com/cyber-security/geico-data-breach-leaks-drivers-license-numbers-advises-customers-to-watch-out-for-fraudulent-unemployment-claims/(last accessed on June 2, 2023).
[29] *Id.*
[30] *How Identity Thieves Took My Wife for a Ride,* NY Times, April 27, 2021, available at: https://www.nytimes.com/2021/04/27/your-money/identity-theft-auto-insurance.html (last accessed on June 2, 2023).

CLASS ACTION COMPLAINT

89.    At all relevant times, Defendant knew or reasonably should have known these risks, the importance of safeguarding Private Information, and the foreseeable consequences if its data security systems were breached and strengthened their data systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

### *Plaintiff's and Class Members' Damages*

90.    To date, Defendant has done absolutely nothing to provide Plaintiff and Class Members with relief for the damages they have suffered as a result of the cyber-attack and data breach, including, but not limited to, the costs and loss of time they incurred because of the cyber-attack. The complimentary credit monitoring service offered by Defendant is wholly inadequate as the services are only offered for 12 months and it places the burden squarely on Plaintiff and Class Members by requiring them to expend time signing up for that service, as opposed to automatically enrolling all victims of this cybercrime.

91.    Moreover, Defendant entirely fails to provide any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PHI and PII.

92.    Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

### *Plaintiff Elder's Experience*

93.    Plaintiff Elder was required to provide her Private Information to Defendant in connection with her being an employee of Defendant in or around 2014 at their San

CLASS ACTION COMPLAINT

Francisco location and again in 2017 when she was rehired at a different location in Pasadena, CA. Plaintiff Elder has not been an employee for Defendant for approximately five years.

94.     Plaintiff Elder is very careful about sharing her Private Information. Plaintiff Elder has never knowingly transmitted unencrypted sensitive PHI or PII over the internet or any other unsecured source. Plaintiff Elder stores any documents containing her sensitive PHI and PII in a safe and secure location or destroys the documents. Moreover, Plaintiff Elder diligently chooses unique usernames and passwords for her various online accounts.

95.     Plaintiff Elder only allowed Defendant to maintain, store, and use her Private Information because she believed that Defendant would use adequate security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information. As a result, Plaintiff Elder's Private Information was within the possession and control of Defendant at the time of the Data Breach.

96.     In or around May 2023, Plaintiff Elder received notice from Defendant that her Private Information had been improperly accessed during a cybersecurity incident in March 2023. Defendant notified Plaintiff and Class members that "an unauthorized actor accessed certain folders on [its] devices between March 15, 2023 and March 25, 2023" and obtained Plaintiff's and Class Members' "name[s], driver's license number[s] or state

CLASS ACTION COMPLAINT

identification number[s], and/or medical or health information." There is no indication from Defendant that the PHI and PII was encrypted or redacted in any way.

97.    As a result of the Data Breach, Plaintiff Elder made reasonable efforts to mitigate the impact of the Data Breach after receiving the data breach notification, including but not limited to: researching the Data Breach; reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud; researching the credit monitoring and identity theft protection services offered by Defendant; checking her credit monitoring service. Plaintiff Elder has spent at least five hours dealing with the Data Breach; valuable time Plaintiff Elder otherwise would have spent on other activities, including but not limited to recreation. Plaintiff and Class Members will need identity theft protection services and credit monitoring services for their respective lifetimes, considering the immutable nature of the PHI and PII at issue, which includes driver's license numbers and medical information. This time, which has been lost forever and cannot be recaptured, was spent at Defendant's direction.

98.    As a result of the Data Breach, Plaintiff Elder has suffered emotional distress as a result of the release of her Private Information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of identity theft and fraud. Plaintiff Elder is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

CLASS ACTION COMPLAINT

99. Plaintiff Elder suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of tangible property that Defendant obtained from Plaintiff Elder; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft, fraud, and misuse resulting from her Private Information being placed in the hands of criminals.

100. As a result of the Data Breach, Plaintiff Elder anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Elder will continue to be at substantial and immediate risk of identity theft and fraud for years to come.

101. Defendant acknowledged the risk posed to Plaintiff Elder and her Private Information. Indeed, Defendant offered a one-year credit monitoring service.

102. Both Plaintiff and Class Members now face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

103. Plaintiff and Class Members have been and face a substantial risk of being targeted in the future, subjected to phishing, data intrusion, and other illegal actions based on their Private Information as potential fraudsters could use that information to target such schemes more effectively.

104.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the cyber-attack.

105.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the cyber-attack. Numerous courts have recognized the propriety of loss of value damages in related cases.

106.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial and medical accounts and records for misuse.

107.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the cyber-attack. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the cyber-attack relating to:

    a.   Finding fraudulent charges;

    b.   Canceling and reissuing credit and debit cards;

    c.   Purchasing credit monitoring and identity theft prevention;

    d.   Addressing their inability to withdraw funds linked to compromised accounts;

    e.   Taking trips to banks and waiting in line to obtain funds held in limited accounts;

    f.   Placing "freezes" and "alerts" with credit reporting agencies;

-28-

CLASS ACTION COMPLAINT

g.    Spending time on the phone with or at a financial institution to dispute fraudulent charges;

h.    Contacting financial institutions and closing or modifying financial accounts;

i.    Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

j.    Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k.    Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

108.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which remains in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is password-protected.

109.    Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information—which contains the most

intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

110.    Plaintiff and Class Members were also injured and damaged by the delayed notice of this data breach, as it exacerbated the substantial and present risk of harm by leaving Plaintiff and Class Members without the knowledge that would have enabled them to take proactive steps to protect themselves.

111.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at a present and definitely increased risk of future harm.

## IV.    CLASS ACTION ALLEGATIONS

112.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

113.    Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), 23(c)(4) and/or 23(c)(5).

114.    Plaintiff proposes the following Class definitions, subject to amendment based on information obtained through discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

///

///

<u>National Class</u>: All persons residing in the United States whose PHI and/or PII was compromised in the Data Breach announced by SLT on or about May 24, 2023, and who were sent notice of the Data Breach.

<u>California Class</u>: All California Residents whose PHI and/or PII was compromised in the Data Breach announced by SLT on or about May 24, 2023, and who were sent notice of the Data Breach (the "California Subclass").

115.    The Nationwide Class, and California Subclass are collectively referred to herein as "Class" unless otherwise stated.

116.    Excluded from the Class are Defendant's officers and directors; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

117.    Plaintiff reserves the right to amend the definitions of the Class or add a Class if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

118.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same

evidence as would be used to prove those elements in individual actions alleging the same claims.

119. <u>Numerosity</u>. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of tens of thousands of Defendant's current and former employees whose data was compromised in the cyber-attack and data breach.

120. <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

        a)    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

        b)    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the cyber-attack;

        c)    Whether Defendant's data security systems prior to and during the cyber-attack complied with applicable data security laws and regulations;

        d)    Whether Defendant's data security systems prior to and during the cyber-attack were consistent with industry standards;

CLASS ACTION COMPLAINT

e)  Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f)  Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g)  Whether computer hackers obtained Class Members' Private Information in the cyber-attack;

h)  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i)  Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j)  Whether Defendant owed a duty to provide Plaintiff and Class Members notice of this data breach, and whether Defendant breached that duty;

k)  Whether Defendant's conduct was negligent;

l)  Whether Defendant's acts, inactions, and practices complained of herein amount to an invasion of privacy;

m)  Whether Defendant's actions violated federal law; and

n)  Whether Plaintiff and Class Members are entitled to damages, civil penalties, and/or injunctive relief.

121. <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the cyber-attack.

122. <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

123. <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

124. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as

a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

125.    Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## CAUSES OF ACTION

### COUNT I
### Negligence
### (On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)

126.    Plaintiff and all Class Members re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 125.

127.    As a condition of receiving employment from Defendant, Defendant's current and former employees (including Plaintiff and Class Members) were obligated to provide Defendant with the sensitive PHI and PII referenced herein.

128.    Plaintiff and the Class entrusted their PHI and PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PHI and PII for business purposes only, and/or not disclose their PHI and PII to unauthorized third parties.

129.    Defendant had full knowledge of the sensitivity of the PHI and PII and the types of harm that Plaintiff and the Class could and would suffer if the PHI and PII were wrongfully disclosed.

130. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PHI and PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

131. Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PHI and PII of Plaintiff and the Class in Defendant's possession was adequately secured and protected.

132. Defendant also had a duty to exercise appropriate clearinghouse practices to remove former employees' PHI and PII that Defendant were no longer required to retain pursuant to regulations.

133. Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PHI and PII of Plaintiff and the Class.

134. Defendant's duty to use reasonable security measures arose as a result of the contractual relationship that existed between Defendant and Plaintiff and the Class.

135. Defendant was also subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

///

///

136.   A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

137.   Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PHI and PII of Plaintiff and the Class, the critical importance of providing adequate security of that information, and the necessity for encrypting or redacting PHI and PII stored on Defendant's systems.

138.   Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions to not comply with industry standards for the safekeeping of the PHI and PII of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

139.   Plaintiff and the Class had no ability to protect their PHI and PII that was in, and possibly remains in, Defendant's possession.

140.   Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

141.   Defendant had and continues to have a duty to adequately disclose that the PHI and PII of Plaintiff and the Class within Defendant's possession might have been

compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PHI and PII by third parties.

142.   Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PHI and PII of Plaintiff and the Class.

143.   Defendant has admitted that the PHI and PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

144.   Defendant, through its actions and/or omissions, unlawfully breached their duties to Plaintiff and the Class by failing to implement industry standard protocols and exercise reasonable care in protecting and safeguarding the PHI and PII of Plaintiff and the Class during the time the PHI and PII was within Defendant's possession or control.

145.   Defendant improperly and inadequately safeguarded the PHI and PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

146.   Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PHI and PII of Plaintiff and the Class in the face of increased risk of theft.

///

///

CLASS ACTION COMPLAINT

147.   Defendant, through its actions and/or omissions, unlawfully breached their duty to Plaintiff and the Classes by failing to have appropriate procedures in place to detect and prevent dissemination of their current and former employees' PHI and PII.

148.   Defendant, through its actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

149.   But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PHI and PII of Plaintiff and the Class would not have been compromised.

150.   There is a close causal connection between Defendant's failure to implement security measures to protect the PHI and PII of Plaintiff and the Class and the present harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PHI and PII of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PHI and PII by adopting, implementing, and maintaining appropriate security measures.

151.   Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

///

152.   Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PHI and PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

153.   Defendant violated Title II of HIPAA and regulations implemented by the HHS pursuant to HIPAA, as well as the standards of conduct established by HIPAA and its attendant regulations, which required Defendant to implement security measures to protect PHI.

154.   Defendant's violation of Section 5 of the FTC Act and Title II of HIPAA, including HIPAA regulations HHS has implemented pursuant to Title II, as well as the standards of conduct established by these statutes and regulations, constitutes negligence per se.

155.   Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

156.   Plaintiff and the Class are within the class of persons that the HIPAA was intended to protect.

157.   The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and HIPAA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data

security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

158.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PHI and PII is used; (iii) the compromise, publication, and/or theft of their PHI and PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI and PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PHI and PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI and PII of Plaintiff and the Class; and (viii) costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI and PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

159.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will continue to suffer other forms of injury

CLASS ACTION COMPLAINT

and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

160.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PHI and PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI and PII in their continued possession.

161.    Plaintiff and Class Members are therefore entitled to damages, including actual and compensatory damages, restitution, declaratory and injunctive relief, and attorney fees, costs, and expenses.

## <u>COUNT II</u>
### Breach of Implied Contract
### (On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)

162.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 125.

163.    Plaintiff and the Class Members delivered their Private Information to Defendant as part of the process of obtaining employment with Defendant.

164.    Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an

implied covenant of good faith and fair dealing by which Defendant was required to perform their obligations and manage Plaintiff's and Class Member's data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

165.    In providing their Private Information, Plaintiff and Class Members entered into an implied contract with Defendant whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' Private Information.

166.    In delivering their Private Information to Defendant, Plaintiff and the Class intended and understood that Defendant would adequately safeguard that data.

167.    Plaintiff and the Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

168.    Defendant accepted possession of Plaintiff's and Class Members' personal data for the purpose of providing employment to Plaintiff and Class Members.

169.    Had Defendant disclosed to Plaintiff and Class Members that Defendant did not have adequate computer systems and security practices to secure employees' Private Information, Plaintiff and Class Members would not have provided their Private Information to Defendant.

170.    Defendant recognized that their current and former employees' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

171.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

172.    Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard their data.

173.    Defendant breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their Private Information.

174.    As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' Private Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Private Information; (g) the diminution in the value of the services bargained for as Plaintiff and

Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed classes entrusted Defendant with their Private Information; and (h) the continued and substantial risk to Plaintiff's and Class Members' Private Information, which remains in the Defendant's possession of Defendant with inadequate measures to protect Plaintiff's and Class Members' Private Information.

### COUNT III
**Unjust Enrichment**
**(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

175.   Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 125.

176.   Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable Private Information.

177.   Defendant enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

178.   Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

179.   Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

180.   Defendant acquired the monetary benefit and PHI and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

181.   If Plaintiff and Class Members knew that Defendant had not secured their PHI and PII, they would not have agreed to provide their PII to Defendant.

182.   Plaintiff and Class Members have no adequate remedy at law.

183.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their PHI and PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake

appropriate and adequate measures to protect Private Information in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

184.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

### **COUNT IV**
**Violation of the Drivers' Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq*.**
**(On behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

185.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 125.

186.    Plaintiff brings this Count on her own behalf and on behalf of the Class.

187.    The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." 18 U.S.C. § 2724.

188.    Under the DPPA, "person" is defined as "an individual, organization, or entity." 18 U.S.C. 2725(2). Defendant is a "person" under the DPPA.

-47-

189.   Further, the definition of "disclose" is "to make known or public" or "expose to view."[31] Defendant's voluntary action of exposing Plaintiff's and Class Members' PII constitutes a knowing disclosure. In particular, Defendant voluntarily disclosed Plaintiff's and Class Members' PII when it failed to adequately secure their PII on its systems. In doing so, unauthorized actors were able to access and obtain the PII of Plaintiff and Class Members for nefarious purposes.

190.   The DPPA also restricts the resale and redisclosure of personal information and requires authorized recipients to maintain records of each individual and the permitted purpose of the disclosure for a period of five years. 18 U.S.C. § 2721(c).

191.   Under the DPPA, a "'motor vehicle record' means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles.'" 18 U.S.C. § 2725(1). Drivers' license numbers are motor vehicle records and personal information under the DPPA. 18 U.S.C. § 2725(3); *see also Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943 (7th Cir. 2015).

192.   Defendant obtained, used, disclosed, resold, and redisclosed motor vehicle records from their employees.

193.   Defendant also obtained motor vehicle records directly from state agencies or through resellers who sell such records.

---

[31] https://www.merriam-webster.com/dictionary/disclose (last accessed on June 2, 2023).

194. Defendant knowingly used motor vehicle records for uses not permitted by the statute, including sales, and marketing, among other impermissible uses.

195. Defendant knowingly and voluntarily configured and designed their computer systems and/or linked their respective public websites to systems and/or networks storing, maintaining, and/or obtaining Plaintiff's and Class Members' PII, which resulted in the disclosure of Plaintiff's and Class Members' PII to cybercriminals.

196. Defendant failed to use reasonable care in protecting Plaintiff's and Class Members' PII by installing substandard security measures that failed to protect it.

197. Further, Defendant had actual and/or constructive notice of the risk to Plaintiff's and the Class Members' PII because they should have been aware that failing to incorporate basic security measures in the configuration and design of their systems would cause the improper disclosure of Plaintiff's and Class Members' PII.

198. During the period between March 15, 2023 and March 25, 2023, PII, including drivers' license numbers and other information from motor vehicle records, of Plaintiff and Class Members, were available to thieves and have been removed from Defendant's systems. Defendant knowingly used and disclosed and/or redisclosed Plaintiff's and Class Members' motor vehicle records and PII to thieves, which is not an authorized use permitted by the DPPA pursuant to 18 U.S.C. §§ 2724, 2721(b), and 2721(c).

///

///

199.    As a result of the Data Breach, Plaintiff and putative Class Members are entitled to actual damages, liquidated damages, punitive damages, attorneys' fees and costs.

**COUNT V**
**Invasion of Privacy**
**(On behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

200.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 125.

201.    Plaintiff brings this Count on her own behalf and on behalf of the Class.

202.    Plaintiff and Class Members had a legitimate expectation of privacy to their PHI and PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

203.    Defendant owed a duty to Plaintiff and Class Members to keep their PHI and PII confidential.

204.    Defendant intentionally failed to protect and released to unknown and unauthorized third parties the non-redacted and non-encrypted PHI and PII of Plaintiff and Class Members.

205.    Defendant allowed unauthorized and unknown third parties access to and examination of the PHI and PII of Plaintiff and Class Members, by way of Defendant's failure to protect the PHI and PII.

//

///

206.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PHI and PII of Plaintiff and Class Members is highly offensive to a reasonable person.

207.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their PHI and PII to Defendant as part of their relationships with Defendant, but privately with an intention that the PHI and PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

208.    The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

209.    Defendant acted with intention and a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that their information security practices were inadequate and insufficient.

210.    Because Defendant acted with this knowing state of mind, it had notice and knew its inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

///

-51-
CLASS ACTION COMPLAINT

211.   As a proximate result of the above acts and omissions of Defendant, PHI and PII of Plaintiff and Class Members was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer damages.

212.   Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the PHI and PII maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

## COUNT VI
### Violation of the California Consumer Privacy Act
### Cal. Civ. Code §§ 1798.100, *et. seq*. ("CCPA")
### (On Behalf of Plaintiff and the California Subclass)

213.   Plaintiff and the California Subclass re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 125.

214.   Plaintiff brings this Count on her own behalf and on behalf of the California Subclass.

215.   As more personal information about consumers is collected by businesses, consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access and disclosure. The California Legislature explained: "The unauthorized disclosure of personal information

CLASS ACTION COMPLAINT

and the loss of privacy can have devasting effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm."

216.    As a result, in 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected. Defendant failed to implement such procedures which resulted in the Data Breach.

217.    It also requires "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(c).

218.    Section 1798.150(a)(1) of the CCPA provides:

> Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized

CLASS ACTION COMPLAINT

access and exfiltration, theft, or disclosure as a result of the business'
violation of the duty to implement and maintain reasonable security
procedures and practices appropriate to the nature of the information to
protect the personal information may institute a civil action for statutory
or actual damages, injunctive or declaratory relief, and any other relief
the court deems proper.

219.    Plaintiff and the California Subclass Members are "consumer[s]" as defined by Civ. Code § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017."

220.    Defendant is a "business" as defined by Civ. Code § 1798.140(c) because Defendant:

a.  is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners";

b.  "collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information";

c.  does business in California; and

CLASS ACTION COMPLAINT

d. has annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 100,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues from selling consumers' personal information.

221. The Private Information taken in the Data Breach is personal information as defined by Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiff's and the California Subclass Members' unencrypted names and driver's license numbers among other information.

222. Plaintiff and the California Subclass's Private Information was subject to unauthorized access and exfiltration, theft, or disclosure because their Private Information, including name and contact information was wrongfully taken, accessed, and viewed by unauthorized third parties.

223. The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff's and the California Subclass Members' Private Information. Defendant failed to implement reasonable security procedures to prevent an attack on their server or network, including its email system, by hackers and to prevent

unauthorized access of Plaintiff's and California Subclass Members' PHI and PII as a result of this attack.

224.    On June 5, 2023, Plaintiff provided Defendant with written notice of its violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1). If Defendant fails to respond, or has not "actually" cured, or is unable to "actually cure" the violation within 30 days thereof, Plaintiff will amend this Complaint to seek all relief available under the CCPA including damages to be measured as the greater of actual damages or statutory damages in an amount up to seven hundred and fifty dollars ($750) per consumer per incident. *See* Cal. Civ. Code § 1798.150(a)(1)(A) & (b).

225.    As a result of Defendant's failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff seeks injunctive relief, including public injunctive relief, declaratory relief, and any other relief as deemed appropriate by the Court.

## COUNT VII
### Violation of the California Customer Records Act ("CCRA")
### Cal. Civ. Code §§ 1798.80, et. seq.
### (On Behalf of Plaintiff and the California Subclass)

226.    Plaintiff and the California Subclass re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 125.

227.    Plaintiff brings this Count on her own behalf and on behalf of the California Subclass.

228. The California legislature enacted the California Customer Records Act ("CCRA") to "ensure that personal information about California residents is protected." Cal. Civ. Code § 1798.81.5.

229. The CCRA states that any business which "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(b).

230. Under the CCRA, personal information includes "[a]n individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted: Social Security number, Driver's license number . . . [or] medical information."

231. The personal information compromised in the Data Breach includes information that meets this definition. The information was unencrypted and unredacted as evidenced by the fact that Defendant was required to provide notification letters under the laws of several states that require notification of unauthorized access to unencrypted and unredacted information.

232. Defendant failed to maintain reasonable data security procedures appropriate to the nature of the personal information. Accordingly, Defendant violated Cal. Civ. Code § 1798.81.5(b).

CLASS ACTION COMPLAINT

233.    Plaintiff and the California Subclass were injured by Defendant's violation of Cal. Civ. Code § 1798.81.5(b) and seek damages pursuant to Cal. Civ. Code § 1798.84(b). Plaintiff and the California Subclass were injured in the various ways alleged herein. They seek all monetary and non-monetary relief allowed by the CCRA to compensate for their various types of damages alleged herein.

234.    Plaintiff and the California Subclass are also entitled to injunctive relief pursuant to Cal. Civ. Code § 1798.84(e), including substantial improvements to Defendant's data security systems.

## COUNT VIII
### Violation of the California Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et. seq.*
### (On Behalf of Plaintiff and the California Subclass)

235.    Plaintiff and the California Subclass re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 125.

236.    Plaintiff brings this Count on her own behalf and on behalf of the California Subclass.

237.    Plaintiff and Defendant are "persons" as defined by Cal. Bus. & Prof. Code § 17201.

238.    The UCL prohibits "unlawful, unfair, or fraudulent business acts or practices."

///

///

-58-

239. By failing to take reasonable precautions to protect the PHI and PII of Plaintiff and the California Subclass, Defendant has engaged in "unlawful" and "unfair" business practices in violation of the UCL.

240. First, Defendant engaged in "unlawful" acts or practices because it violated multiple laws, including the California Consumer Privacy Act, Cal. Civ. Code § 1798, *et seq.*; California Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; the FTC Act; and the common law, all as alleged herein.

241. Second, Defendant engaged in "unfair" acts or practices, including the following:

    a. Defendant failed to implement and maintain reasonable data security measures to protect the California Subclass Members' PHI and PII. Defendant failed to identify foreseeable security risks and adequately maintain their data security in light of the known risk of cyber intrusions, especially in light of the highly sensitive nature of the information which Defendant stored. Defendant's conduct, with little if any social utility, is unfair when weighed against the harm to the California Subclass Members whose PHI and PII has been compromised.

    b. Defendant's failure to implement and maintain reasonable data security measures was contrary to legislatively-declared public policy that seeks to protect consumers' personal information and ensures that entities entrusted

with PHI and PII adopt appropriate security measures. These policies are reflected in various laws, including the CCPA (Cal. Civ. Code §§ 1798.100 *et seq.*); the FTC Act (15 U.S.C. § 45).

c. Defendant's failure to implement and maintain reasonable data security measures led to the substantial consumer injuries described herein. These injuries are not outweighed by countervailing benefits to consumers or competition. Moreover, because consumers could not have reasonably known of Defendant's inadequate data security, consumers could not have reasonably avoided the harms that Defendant's conduct caused.

242. As a direct and proximate result of Defendant's acts of unlawful and unfair practices and acts, Plaintiff and the California Subclass were injured and lost money or property, and suffered the various types of damages alleged herein.

243. The UCL states that an action may be brought by any person who has "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Plaintiff and the California Subclass Members suffered injury in fact and lost money or property, including in the form of the loss of value of their breached PHI and PII, as a result of Defendant's unfair competition as set forth herein. PHI and PII is valuable which is demonstrated by the fact that Defendant's business is built in part by managing the PHI and PII of the California Subclass.

244.    Plaintiff and the California Subclass are entitled to injunctive relief to address Defendant's past and future acts of unfair competition.

245.    Plaintiff and the California Subclass are entitled to restitution of money and property that Defendant obtained by means of unlawful, unfair, or fraudulent practices, and restitutionary disgorgement of all profits accruing to Defendant as a result of their unlawful and unfair business practices.

246.    Plaintiff lacks an adequate remedy at law because the injuries here include an imminent risk of identity theft and fraud that can never be fully remedied through damages.

247.    Further, if an injunction is not issued, Plaintiff and California Subclass Members will suffer irreparable injury. The risk of another such breach is real, immediate, and substantial. Plaintiff and the California Subclass lack an adequate remedy at law that will reasonably protect them against the risk of such further breach.

248.    Plaintiff and the California Subclass seek all monetary and non-monetary relief available to them under the UCL, including reasonable attorney's fees as allowed under Cal. Code Civ. Proc. §1021.5.

### COUNT IX
**Declaratory and Injunctive Relief**
**(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

249.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 125.

250.    Plaintiff brings this Count on her own behalf and on behalf of the Class.

251.   This Count is brought under the federal Declaratory Judgment Act, 28 U.S.C. §2201.

252.   Plaintiff and Class Members entered into an implied contract that required Defendant to provide adequate security for the Private Information it collected from Plaintiff and Class Members.

253.   Defendant owes a duty of care to Plaintiff and Class Members requiring them to adequately secure PHI and PII.

254.   Defendant still possesses PHI and PII regarding Plaintiff and Class Members.

255.   Since the Data Breach, Defendant has announced few if any specific and significant changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent further attacks.

256.   Defendant has not satisfied their contractual obligations and legal duties to Plaintiff and Class Members. In fact, now that Defendant's insufficient data security is known to hackers, the Private Information in Defendant's possession is even more vulnerable to cyber-attack.

257.   Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further

CLASS ACTION COMPLAINT

harm due to the exposure of their PHI and PII and Defendant's failure to address the security failings that lead to such exposure.

258.   There is no reason to believe that Defendant's security measures are any more adequate now than they were before the Data Breach to meet Defendant's contractual obligations and legal duties.

259.   Plaintiff, therefore, seeks a declaration (1) that Defendant's existing security measures do not comply with their contractual obligations and duties of care to provide adequate security, and (2) that to comply with their contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to, the following:

a.  Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b.  Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c.  Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

d.  Ordering that Defendant segment employee data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

e.  Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

f.  Ordering that Defendant conduct regular computer system scanning and security checks;

g.  Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.  Ordering Defendant to meaningfully educate their current, former, and prospective customers about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and Class Members, request judgment against Defendant and that the Court grant the following:

A.  For an Order certifying the Class, and appointing Plaintiff and her Counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PHI and PII of Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.    requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI and PII for Plaintiff's and Class Members' respective lifetimes;

CLASS ACTION COMPLAINT

v.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PHI and PII of Plaintiff and Class Members;

vi.   prohibiting Defendant from maintaining the PHI and PII of Plaintiff and Class Members on a cloud-based database;

vii.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

viii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

x.   requiring Defendant to segment data by, among other things, creating firewalls and controls so that if one area of Defendant's network is compromised, hackers cannot gain access to portions of Defendant's systems;

///

CLASS ACTION COMPLAINT

xi.    requiring Defendant to conduct regular database scanning and securing checks;

xii.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xiii.    requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv.    requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xv.    requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and

external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvii. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

///

CLASS ACTION COMPLAINT

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands that this matter be tried before a jury.

Dated: June 6, 2023

Respectfully submitted,

<u>/s/ *M. Anderson Berry*</u>

M. Anderson Berry (262879)
Gregory Haroutunian (330263)
Brandon P. Jack (325584)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
6200 Canoga Avenue, Suite 375
Woodland Hills, CA 91367
Telephone: (747) 777-7748
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com
bjack@justice4you.com

*Attorneys for Plaintiff and the Class*

CLASS ACTION COMPLAINT